OPINION
This is an appeal from the Willoughby Municipal Court, Lake County, Ohio. Appellant, Zvonko Mazura, appeals the trial court's judgment entry finding him guilty of the offense of driving under the influence, in violation of Willoughby Ordinance Section 434.01(a).
The following facts are derived from the trial court's findings of fact as stated in its December 9, 1997 judgment entry overruling appellant's motion to suppress.
On October 11, 1997, at approximately 2:47 a.m., Daniel Pitts ("Officer Pitts"), a police officer employed by the city of Willoughby, observed appellant operating his vehicle eastbound on Euclid Avenue in Willoughby, Ohio, near the Willoughby Police Department. After watching appellant's vehicle for approximately one-quarter of a mile and observing it weave within its lane of travel and follow the vehicle directly ahead of it at a distance of twenty feet or less, Officer Pitts performed a "precautionary" traffic stop because he felt that appellant may be driving under the influence of alcohol.
During the precautionary stop, Officer Pitts learned that appellant had a limited understanding of the English language. Officer Pitts also smelled the odor of alcohol on appellant's breath. Officer Pitts then directed appellant to perform the heel-to-toe and horizontal gaze nystagmus roadside tests, both of which were explained to appellant in English and demonstrated. Appellant was arrested for driving under the influence of alcohol and/or drugs, in violation of Willoughby Ordinance Section 434.01(a), after failing both tests. Furthermore, a traffic ticket was filed alleging that he was found driving in a weaving course, in violation of Willoughby Ordinance Section 432.37.
After his arrest, appellant was transported to the Willoughby Police Department, where he was Mirandized, given the implied consent form, and questioned by police. After questioning ceased, appellant made a telephone call. After the phone call, appellant was given a Breathalyzer test, which indicated that appellant had a blood alcohol content ("BAC") of .157. Based on this finding, appellant was charged with driving with a BAC in excess of the legal limit, in violation of Willoughby Ordinance Section 434.01(a).
The trial court also found that although the police department employed a police officer who could speak Croatian, appellant had a sufficient understanding of the English language to comprehend the charge against him and the proceedings before him.
At his arraignment, appellant entered a plea of not guilty to each of the three charges. On November 20, 1997, appellant filed a "Motion to Suppress and/or Dismiss." A hearing on appellant's motion to suppress was conducted on December 4, 1997. On December 5, 1997, appellant filed a "Post Hearing Memo in Support of [Appellant's] Motion to Suppress and/or Motion to Dismiss," a "Motion to Amend Motion to Suppress to Include a Motion In Limine," and a "Request for Findings of Fact." On December 9, 1997, the trial court filed its order overruling appellant's motion to suppress. On December 11, 1997, a plea hearing was conducted by the trial court. At the plea hearing, appellant entered a plea of no contest to the charge of "driving under the influence."
In a judgment entry dated December 11, 1997, the trial court found appellant guilty on the charge of driving under the influence, in violation of Willoughby Ordinance Section 434.01(a). The court imposed a sentence consisting of incarceration in jail for ninety days, with eighty-five days suspended, to be served as five days in jail or attend a drivers' intervention program and perform two days community service to be served within thirty days. Also, the trial court suspended appellant's driver's license for one hundred eighty days, instituted one-year probation, and ordered him to attend alcohol and drug counseling as required by his probation officer.[1] In a separate judgment entry dated December 11, 1997, the trial court entered judgment granting a nolle prosequi on the remaining two charges.
On January 6, 1998, appellant timely filed this notice of appeal, and now asserts the following assignments of error:
 "[1.] The trial court erred in overruling the appellant's motion to suppress when the state failed to prove the officer had a reasonable and articulable suspicion that appellant was violating the law.
 "[2.] The trial court erred in denying appellant's motion to suppress where the appellant was not given [Miranda] warnings in a language he could understand and the state failed to prove that appellant waived his [Miranda] rights.
 "[3.] The trial court erred in denying appellant's motion to suppress and in not excluding evidence of the breathalyzer test where the appellant was not advised of his statutory right to refuse the breathalyzer and his statutory right to communicate with counsel.
 "[4.] The trial court erred in taking judicial notice of a prior traffic offense and allowing the prosecutor over defense counsel's objection to cross-examine the appellant about a prior stop thereby depriving appellant of due process of law and a fair hearing.
 "[5.] The trial court failed to inform appellant of his rights, prior to accepting his plea of no contest, as required under Crim. R. 11, and therefore appellant's conviction must be reversed."
In the first assignment of error, appellant contends that appellee failed to prove that the police made a legal stop of appellant's vehicle because the evidence failed to demonstrate that Officer Pitts could have a reasonable and articulable suspicion that a crime was being committed or about to be committed.
Under the investigative stop exception to the Fourth Amendment warrant requirement, police may stop an individual if such stop is based on a reasonable suspicion, demonstrated by specific and articulable facts, that criminal behavior has occurred or is imminent. See, generally, Terry v. Ohio (1968), 392 U.S. 1. In order to assess the propriety of an investigative stop, a court is required to examine the "totality of the circumstances" providing the basis for a police officer's suspicion. State v. Bobo (1988),37 Ohio St.3d 177, paragraph one of the syllabus. "Since a stop is per se unreasonable, it [is] incumbent on [the state] to fully develop the circumstances to justify a non-warrant seizure." Statev. Gullet (1992), 78 Ohio App.3d 138, 145.
In State v. Esque (Sept. 16, 1994), Lawrence App. No. 94 CA 10, unreported, at 3, 1994 WL 521239, quoting, in part, State v. Lynn
(Dec. 4, 1992), Hocking App. No. 92 CA 8, unreported, 1992 WL 368826, the court held:
 "`All vehicles and all drivers weave within their lanes to some extent. This is why we have ten to twelve feet wide lanes to accommodate cars and trucks which are usually only five to eight feet wide. * * *'
"* * *
 "The phrase, `weaving in the lane,' is not some incantation that makes constitutional rights magically disappear. Nor does the phrase, `weaving in the lane,' absolve erratic driving simply because the phrase can be used to describe the kind of driving the officer observes. Where a police officer sees no violation of the law and observes no erratic driving, he may not stop a vehicle for simply weaving in its own lane of traffic. Where the police officer observes erratic driving, part of which may be described as weaving in the lane, he may have reasonable suspicion to justify an investigatory stop."
In State v. Gedeon (1992), 81 Ohio App.3d 617, a police officer noticed the appellant's car weaving, and after the appellant made a right-hand turn, the police officer observed that the appellant's back window was completely covered with snow and then saw the vehicle weave three more times. The police officer then conducted a stop, which was, in part, due to safety concerns stemming from the fact that the appellant's window was covered with snow. In that case, the appellate court affirmed the trial court's determination that the police officer had specific articulable facts to lawfully stop the appellant. Id. at 619.
Importantly, this court has held that police officers may lawfully stop a motor vehicle solely on the basis that the vehicle is weaving, but only when the extent of the weaving was what can be described as substantial. State v. Farley (Feb. 11, 1994), Lake App. No. 93-L-078, unreported, at 4-5. In Farley, this court determined that the weaving was substantial because:
 "* * * The officer testified that he observed appellant's vehicle for over one mile. He testified that the vehicle `was weaving the whole time down the road,' and that the weaving encompassed a range of three to four feet from side to side. * * * The officer estimated that the weaving occurred approximately twelve times." Id.
Finally, in State v. Spikes (June 9, 1995), Lake App. No. 94-L-187, unreported, at 9, this court reversed the trial court's decision to overrule the appellant's motion to suppress. In that case, a Mentor police officer observed the appellant's vehicle traveling with its hazard lights on at approximately 2:10 a.m. The police officer then followed the appellant and observed his vehicle cross over the right hand white line four times. The police officer did not testify that the appellant's vehicle was driven erratically, nor that the vehicle was otherwise weaving in the lane. This court held that under the totality of the circumstances:
 "[T]here must be some indicia of erratic driving to warrant an investigative stop beyond some incident of modest or minimal weaving in one's lane alone. This is harmonious with our conclusion obtained in State v. Burwell (Jun. 30, 1994), Lake App. No. 93-L-122, unreported, [at] 4, where we affirmed the propriety of the stop because `(t)he trooper consistently testified that he stopped appellant because she was weaving within her lane, had crossed the white edge line on three occasions, and was traveling at varying speeds.'" Id. at 8.
In the case sub judice, the facts, as determined by the trial court, show that Officer Pitts followed appellant's vehicle for one-quarter of a mile and observed it weave in its lane of travel while traveling approximately twenty feet behind another vehicle. Moreover, in looking at the transcript of the December 4, 1997 hearing on appellant's motion to suppress, Officer Pitts testified that appellant, "was driving on the center double yellow line and touching that line going to the other — the divider, the white divider line several times."
On cross-examination, Officer Pitts testified that he was following behind appellant's vehicle at a distance of approximately one hundred feet. Officer Pitts later stated that he could not recollect the exact number of times that appellant's vehicle weaved, but admitted that his use of the term "several," could have meant that appellant weaved only three times. Also, Officer Pitts testified that his reason for conducting a stop of appellant's vehicle resulted, not from a traffic infraction, but because he suspected that appellant was driving under the influence of alcohol.
While the transcript provides further factual evidence beyond that articulated in the trial court's judgment entry overruling appellant's motion to suppress, its greater importance rests in those facts it fails to elucidate. After reviewing the transcript and the entire record, appellee failed to set forth any evidence indicating how fast appellant's vehicle was traveling; the speed limit on the stretch of road in issue; how wide the lanes of traffic were; how wide appellant's car was; or the exact number of times appellant's car "weaved," though testimony indicated that it could have been as few as three times. Furthermore, there is no evidence that appellant's automobile was driven in an erratic fashion.
Based on the reasoning in Spikes, Gedeon, Farley, Gullet, andEsque, this court concludes that the facts revealed in the record of this case are insufficient to support a reasonable and articulable suspicion to stop appellant's vehicle on the basis that criminal activity had occurred or would imminently occur, which the Fourth Amendment requires. Following Spikes, we reiterate that in order for there to be a legal traffic stop based solely on a vehicle's weaving, the weaving must give some indicia of erratic driving. In Farley, this court indicated that police may stop a car solely on the grounds that it was weaving, so long as the weaving was "substantial." In the case of Farley, this court further determined that substantial weaving occurred when a police officer followed the appellant's motor vehicle for one mile and during that one mile, the weaving was constant, and it weaved three to four feet from side to side approximately twelve times.
In the instant matter, there are no facts indicating the "substantial" or "erratic" weaving discussed in the previously mentioned cases. In addition, even if we were to assume that appellant was driving approximately twenty feet behind another vehicle, appellee failed to demonstrate that such conduct constituted erratic driving by virtue of the fact that there was no evidence indicating the speed of the two automobiles. Indeed, a following distance of twenty feet will not constitute improper driving if the two vehicles are traveling at a low rate of speed.
Based on the record before this court, there is insufficient evidence to conclude that appellant's driving was erratic. Consequently, the traffic stop of appellant's vehicle was illegal. Accordingly, appellant's first assignment of error is well-taken. Therefore, the evidence of appellant's BAC and the roadside tests must be suppressed.
As we have concluded that appellant's first assignment of error is with merit, the remaining assignments of error are rendered moot.
For the foregoing reasons, the judgment of the Willoughby Municipal Court is reversed and judgment is entered for appellant.
 __________________________________________ JUDGE MARY CACIOPPO, Ret., Ninth Appellate District, sitting by assignment.
FOR THE COURT
CHRISTLEY, P.J., NADER, J., concur.
[1] On March 12, 1999, this court filed a judgment entry remanding the instant matter back to the trial court in order to make its two December 11, 1997 judgment entries comply with Statev. Ginocchio (1987), 38 Ohio App.3d 105. Specifically, the trial court was requested to clarify the specific Willoughby ordinances to which each judgment entry applied. On March 17, 1999, the trial court filed a judgment entry complying with the request.